**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------x

ANTHONY EGGLESTON JR.,

Plaintiff,

v.

COUNTY OF NORTHAMPTON, and
LORE MCFADDEN
*individually and in her official capacity as Deputy Director of Human Services for Northampton County*,

Defendants.

---------------------------------------------------------------x

Case No. 26-cv-_____

**COMPLAINT**

**JURY DEMANDED**

Plaintiff ANTHONY EGGLESTON JR. ("Plaintiff"), by and through his undersigned counsel, hereby brings this action against Defendants COUNTY OF NORTHAMPTON, (the "County") and LORE MCFADDEN individually and in her official capacity as Deputy Director of Human Services for Northampton County ("McFadden;" collectively with the County, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to Sections 1331 and 1343 of Title 28 of the United States Code, as this action arises under Sections 1981, 1983, and 1988 of Title 42 of the United States Code and the Fourteenth Amendment to the United States Constitution.

2. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to Section 1367 of Title 28 of the United States Code.

3. Venue is proper in this District pursuant to Section 1391, Subsection (b) of Title 28 of the United States Code, because the events giving rise to this action occurred in Northampton County, Pennsylvania, and Plaintiff resides in Lehigh County, Pennsylvania, both within the Eastern District of Pennsylvania.

## PARTIES

***Plaintiff***

4. Plaintiff ANTHONY EGGLESTON JR. is an African-American adult male residing at 210 West Lehigh Street, Bethlehem, PA 18018.

***Defendants***

5. Defendant COUNTY OF NORTHAMPTON is a municipal government entity organized under the laws of the Commonwealth of Pennsylvania, with principal offices at 669 Washington Street, Easton, PA 18042. At all times relevant hereto, the County owned and operated Gracedale Nursing Home ("Gracedale"), a skilled nursing facility located at 2 Gracedale Avenue, Nazareth, PA 18064.

6. Defendant LORE MCFADDEN is an adult individual who, at all times relevant hereto, served as the Deputy Director of Human Services for Northampton County, with offices at Gracedale Nursing Home. She is sued in both her individual and official capacities.

## FACTUAL BACKGROUND

***Plaintiff's Employment History and Prior Protected Activity***

7. Plaintiff served as a Northampton County Corrections Officer for approximately 17 years, maintaining an exemplary record throughout his tenure.

8. Between 2019 and 2024, Plaintiff applied for over 27 internal County promotions and transfers. He received no interview for any application despite his qualifications, years of service, and educational background.

9. In January 2024, Plaintiff sent a written email to the County Safety Administrator alleging racial discrimination in the County's promotion process. Plaintiff stated that he felt discriminated against based on race, that no minorities were receiving promotions, and that he had been systematically overlooked despite his qualifications and tenure.

10. That email was forwarded to the County Prison Director and subsequently to the County HR Director and HR Representative in Courthouse Human Resources.

11. A meeting was held with County HR officials at which the HR Director claimed no knowledge that Plaintiff had applied for over 27 positions without receiving a single interview. No remedial action was taken and Plaintiff was told to continue applying.

12. The County HR Director who received Plaintiff's January 2024 racial discrimination complaint was subsequently observed by Plaintiff on multiple occasions at Gracedale communicating directly with Defendant McFadden prior to the adverse actions described herein.

***Retaliatory Adverse Actions Following the 2024 Complaint***

13. Approximately three months after Plaintiff's January 2024 racial discrimination complaint, he was transferred to the County's Area Agency on Aging.

14. Within two months of that transfer, Plaintiff was required to take a state examination he had not been informed about prior to arrival. Other non-minority new hires at the same location received study assistance from their supervisor that was withheld from Plaintiff.

15. The County pressured Plaintiff to return to the prison following his resignation from the Area Agency on Aging despite the existence of over 20 open positions in the building. Plaintiff declined and resigned in May 2024 to preserve his pension and vacation benefits.

***The County's Contractual Relationship with Haven House and Joint Employment of Plaintiff***

16. Following his resignation, Plaintiff obtained full-time employment with Haven House, Inc. ("Haven House"), a private behavioral health organization that provided mental health counseling services at Gracedale pursuant to a formal written contract with Northampton County.

17. Under that contract, Haven House supplied mental health counseling staff, including Plaintiff, to provide services exclusively at Gracedale to residents identified and assigned by County administrators.

18. County administrators at Gracedale, including Defendant McFadden, exercised supervisory and administrative oversight over the Haven House program operating within Gracedale. That oversight included direct oversight of the conduct, credentials, and suitability of Haven House staff providing services at the facility.

19. The County controlled physical access to Gracedale through a security clearance system it administered exclusively. No Haven House employee could perform work at Gracedale without a security clearance granted and maintained by the County.

20. The County had unilateral authority to revoke any Haven House employee's clearance at any time, thereby permanently excluding that employee from the work site without Haven House's consent. Under the economic realities test, this power of the key is a primary indicia of joint employer status. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015).

21. County administrators, including Defendant McFadden, communicated directly and regularly with Haven House supervisors regarding Haven House staff performance, program operations, resident assignments, and individual employee conduct at Gracedale.

22. The Haven House contract required Haven House staff to comply with Gracedale's policies, procedures, and administrative directives, subjecting Haven House employees to County institutional rules as a condition of their continued work at the facility.

23. Haven House received reimbursement for services rendered at Gracedale by invoicing the County directly, establishing financial interdependence between the two entities and confirming the County's role as the ultimate economic beneficiary of Plaintiff's labor.

24. On September 30, 2025, Defendant McFadden directed Haven House's Executive Director that Plaintiff should not return to Gracedale effective immediately. This directive was issued unilaterally by the County without Haven House's knowledge or consent and directly caused Plaintiff's termination from Haven House.

25. Through its exclusive control of the work site and security clearance system, its administrative oversight of Haven House staff and program operations, the contractual requirement that Haven House staff comply with County policies, its role as ultimate economic beneficiary of the contracted services, and its exercise of the ultimate gatekeeping function over Plaintiff's continued employment, the County functioned as Plaintiff's joint employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and Section 1981 of the Civil Rights Act of 1866 ("Section 1981").

26. Plaintiff also held a separate part-time direct employment position with Northampton County at Gracedale, which he resigned in July 2025 due to the hostile work environment created by Defendant McFadden's conduct.

***Plaintiff's Qualifications and Performance***

27. Plaintiff holds a bachelor's degree in Education and was fully qualified for his Haven House position. Haven House independently verified his credentials prior to his employment and confirmed he met all requirements under both the County and Magellan contracts governing the program.

28. Plaintiff performed his duties competently and professionally. His direct Haven House supervisors held him in high regard and he maintained positive relationships with residents and staff throughout his tenure at Gracedale.

***Defendant McFadden's Discriminatory and Retaliatory Conduct***

29. Upon Plaintiff's presence at Gracedale through Haven House, Defendant McFadden subjected him to immediate heightened scrutiny inconsistent with her treatment of non-minority contractors and employees at the facility.

30. Defendant McFadden issued Plaintiff contested write-ups and refused to provide him copies of those write-ups. She also denied him union representation during disciplinary proceedings despite his status as a dues-paying AFSCME member, providing a justification that was disputed by Plaintiff and inconsistent with the applicable collective bargaining agreement.

31. Throughout her purported investigation of Plaintiff, Defendant McFadden repeatedly identified Plaintiff by race as a primary descriptor in her handwritten investigative notes. No other subject of the investigation was identified by race in the same manner. Specifically, the investigative notes repeatedly referred to Plaintiff as a "Black doctor," "short Black man," and "short African American man" as primary identifiers throughout the investigation record.

32. In May 2025, Erin McFadden, Human Resources Manager at Haven House and sister to Defendant Lore McFadden, told Plaintiff during a meeting in her office that the write-up he received was baseless and advised him to quit his position.

33. On September 19, 2025, Defendant McFadden authored an internal email characterizing Plaintiff as "barely a counselor, if at all." This credibility judgment about his professional qualifications was made before any formal investigation had concluded, before any witness

statements had been collected, and before Haven House had been contacted or consulted regarding the allegations.

34. On that same date, Defendant McFadden initiated the revocation of Plaintiff's security clearance and Plaintiff was physically escorted from Gracedale. Plaintiff was not informed of the specific allegations against him and was not provided any opportunity to respond before the ban was effectuated.

35. Defendant McFadden also authored a written communication to Plaintiff's Haven House supervisors describing concerns about his professional conduct. She explicitly directed that its contents not be shared with Plaintiff, and the communication was only produced to Plaintiff through an Equal Employment Opportunity Commission ("EEOC") proceeding months after his termination.

36. The handwritten investigative notes that formed the purported basis for the adverse action were never provided to Plaintiff prior to or at the time of his removal. Those notes were produced to Plaintiff for the first time through the EEOC proceeding, months after his termination, at a time when he no longer had any meaningful opportunity to respond to or rebut their contents.

37. The County communicated to Haven House that Plaintiff had misrepresented his credentials and his role to residents. Haven House's Executive Director responded in writing confirming that Plaintiff met all position requirements, that his credentials had been independently verified, and that no aggressive behavior had been observed.

38. Haven House's Executive Director stated in writing that September 26, 2025 was the first time Haven House had been notified of any concerns regarding Plaintiff. This was six days after Plaintiff had already been escorted from the building.

39. When Haven House's Executive Director formally requested supporting documentation for the allegations, Defendant McFadden provided none. This was despite representing to Haven House that thirteen (13) witness statements supported the adverse action.

40. Formal witness statements were not collected until September 29, 2025, ten (10) days after Plaintiff was escorted from the building. The formal decision to permanently ban Plaintiff was not communicated to Haven House until September 30, 2025, eleven days after the ban was effectuated.

41. Plaintiff was never provided a name-clearing hearing or any opportunity to respond to the allegations against him before or after the ban was imposed. The specific basis for the ban was concealed from Plaintiff at the time of the adverse action and was only disclosed through the EEOC proceeding months later.

42. As a direct result of the County's permanent security ban, Haven House terminated Plaintiff's employment because he could no longer access Gracedale where he performed his duties.

***Pattern of Discriminatory Treatment of Minority Employees***

43. Defendant McFadden's conduct was not limited to Plaintiff. Other minority employees who worked at Gracedale were subjected to similar treatment by Defendant McFadden, including contested disciplinary action, denial of union representation during disciplinary proceedings despite their status as dues-paying AFSCME members, and accusations of professional misconduct that those employees dispute.

44. Additional minority employees at Gracedale were subjected to harassment and hostile treatment by Defendant McFadden in a manner consistent with the conduct directed at Plaintiff.

45. After Plaintiff filed his complaint with the EEOC, minority employees at Gracedale began receiving the title "employee of the month," a practice that Plaintiff cannot recall ever occurring before the EEOC complaint was filed.

46. This pattern of conduct toward minority employees and contractors at Gracedale establishes that Defendant McFadden's treatment of Plaintiff was not an isolated response to legitimate safety concerns but part of a broader pattern of discriminatory targeting of minority employees at the facility.

***Damages***

47. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, emotional distress, damage to his professional reputation, and foreclosure of employment opportunities in the behavioral health field in Northampton County and the surrounding region.

48. Plaintiff has suffered physical manifestations of emotional distress including insomnia and hypertension causally related to Defendants' conduct.

49. The permanent security ban has effectively foreclosed Plaintiff's ability to work at County facilities and with County contractors in the behavioral health field in this region. This foreclosure of professional opportunity constitutes an ongoing harm that persists independently of Plaintiff's current employment status.

## CAUSES OF ACTION

### COUNT I.
### Race Discrimination in Violation of 42 U.S.C. § 1981
(Against All Defendants)

50. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Section 1981 of the Civil Rights Act of 1866 prohibits racial discrimination in the making and enforcement of contracts and protects against interference with contractual relationships on the basis of race. Unlike Title VII, Section 1981 does not require an employer-employee relationship between the plaintiff and the defendant.

52. Plaintiff had a contractual relationship with Haven House to provide mental health counseling services at Gracedale Nursing Home.

53. Defendants, acting under color of state law, intentionally interfered with and destroyed Plaintiff's contractual relationship with Haven House on the basis of his race.

54. Evidence of racial motivation includes the repeated use of racial identifiers as primary descriptors throughout Defendant McFadden's handwritten investigative notes while no other subject was so identified, the predetermined credibility attack on Plaintiff's professional qualifications in the September 19, 2025 email authored before any formal investigation concluded, the pattern of similar discriminatory treatment of other minority employees and contractors at Gracedale, and the procedurally deficient response that concealed the basis of the adverse action from Plaintiff and denied him any opportunity to respond.

55. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages including lost wages, emotional distress, reputational harm, and professional foreclosure as described herein.

56. Defendant McFadden's conduct was intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights, entitling Plaintiff to punitive damages against her individually.

**COUNT II.**

**Deprivation of Liberty Interest without Due Process of Law in Violation of 42 U.S.C. §**

**1983 and the Fourteenth Amendment to the United States Constitution**
(Against All Defendants)

57. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58. The Fourteenth Amendment prohibits state actors from depriving any person of liberty without due process of law.

59. Plaintiff possessed a constitutionally protected liberty interest in pursuing his chosen profession in the behavioral health field free from government-imposed reputational destruction.

60. Defendants, acting under color of state law, made stigmatizing statements about Plaintiff and published those characterizations to Haven House, Plaintiff's employer of record, in connection with a permanent security ban that directly caused his termination.

61. The permanent security ban constitutes the required plus factor for a stigma-plus due process claim, as it directly altered Plaintiff's status with respect to the County facility and caused the immediate termination of his contractual employment relationship with Haven House.

62. Plaintiff was entitled to notice of the specific allegations against him and a meaningful opportunity to respond before the ban was imposed and before stigmatizing characterizations were published to his employer. No such process was provided.

63. The constitutional violation is not dependent upon the truth or falsity of the underlying allegations. Even assuming the accuracy of the characterizations made by Defendant McFadden, Plaintiff was constitutionally entitled to a name-clearing hearing before his professional reputation was destroyed and his employment terminated. *See Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006).

64. The deprivation of due process was compounded by the fact that the specific basis for the adverse action was actively concealed from Plaintiff at the time of the ban and was only disclosed through the EEOC proceeding months after his termination. Plaintiff could not seek to clear his name of allegations he was never permitted to see.

65. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered the damages described herein.

66. Defendant McFadden's conduct was intentional, willful, and taken with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to punitive damages against her individually.

**COUNT III.**
**Race Discrimination in Violation of PHRA, 43 P.S. §§ 951 *et seq.***
(Against Defendant COUNTY OF NORTHAMPTON)

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. The Pennsylvania Human Relations Act prohibits discrimination in employment based on race and is analyzed in a manner consistent with Title VII.

69. The County functioned as Plaintiff's joint employer within the meaning of the PHRA through its exclusive control of the Gracedale work site and security clearance system, its administrative oversight of the Haven House program and staff, the contractual requirement that Haven House staff comply with County policies and directives, its direct communications with Haven House supervisors regarding individual employee conduct, its role as ultimate economic beneficiary of the contracted services, and its unilateral directive to Haven House that directly caused Plaintiff's termination.

70. Under the economic realities test applicable to joint employer determinations in the Third Circuit, including the standard articulated in *Faush*, *supra*, the County's exercise of ultimate control over access to the work site through its security clearance authority is a

primary factor establishing joint employer status, particularly when combined with the County's active administrative oversight and its unilateral directive causing Plaintiff's termination.

71. Defendant COUNTY OF NORTHAMPTON, acting through its agent Defendant McFadden, subjected Plaintiff to discriminatory treatment based on his race, including heightened scrutiny, denial of union representation rights, a procedurally deficient investigation that concealed its basis from Plaintiff, and a permanent security ban that destroyed his employment.

72. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered the damages described herein.

**COUNT IV.**
**Retaliation in Violation of PHRA, 43 P.S. §§ 951 *et seq.***
(Against Defendant COUNTY OF NORTHAMPTON)

73. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74. In January 2024, Plaintiff engaged in protected activity by submitting a written complaint of racial discrimination to County HR officials, which was received and acknowledged by multiple County officials including the County HR Director.

75. Following Plaintiff's protected activity, the County subjected him to a continuing pattern of adverse actions. Those actions included the transfer to the Area Agency on Aging, a constructive resignation over an undisclosed state examination withheld from Plaintiff while provided to non-minority peers, institutional pressure to return to the prison, and ultimately the permanent security ban at Gracedale that destroyed his Haven House employment.

76. The County HR Director who received Plaintiff's January 2024 discrimination complaint was observed by Plaintiff communicating directly with Defendant McFadden at Gracedale

on multiple occasions prior to the September 2025 adverse action. This supports a reasonable inference of coordination between County officials in furtherance of the retaliatory pattern described herein.

77. The adverse actions described herein constitute a continuing pattern of retaliation for Plaintiff's protected activity that commenced approximately three months after the January 2024 complaint and culminated in the September 2025 permanent ban and resulting termination.

78. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered the damages described herein.

**COUNT V.**
**Tortious Interference with Contract**
(Against Defendant McFadden Individually)

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80. Plaintiff had an existing contractual relationship with Haven House for the provision of mental health counseling services at Gracedale Nursing Home.

81. Defendant McFadden, acting in her individual capacity and through improper means and for improper motives, intentionally interfered with Plaintiff's contractual relationship with Haven House. She did so by making stigmatizing characterizations about Plaintiff to Haven House officials without factual support, by issuing a unilateral permanent security ban without providing Plaintiff any opportunity to respond, and by concealing the basis for the adverse action from Plaintiff while simultaneously using it to induce Haven House to terminate his employment.

82. Defendant McFadden's interference was motivated by racial animus, exceeded the legitimate scope of her authority as a County HR official, and employed means that no legitimate administrative process would sanction.

83. As a direct and proximate result of Defendant McFadden's tortious interference, Plaintiff's Haven House employment was terminated and he suffered the damages described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ANTHONY EGGLESTON JR. respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

a. Compensatory damages for lost wages, lost benefits, emotional distress, reputational harm, and professional foreclosure in an amount to be determined at trial;

b. Punitive damages against Defendant McFadden individually for her intentional, willful, and reckless conduct;

c. Injunctive relief in the form of a constitutionally adequate name-clearing hearing at which Plaintiff may respond to the allegations that formed the basis for the permanent security ban;

d. Declaratory relief that Defendants' conduct violated Plaintiff's rights under Sections 1981 and 1983 of Title 42 of the United States Code, the Fourteenth Amendment to the United States Constitution, and the Pennsylvania Human Relations Act;

e. Reasonable attorney fees and costs pursuant to 42 U.S.C. section 1988 and any other applicable statute;

f. Pre-judgment and post-judgment interest; and

g. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Flushing, NY
October 5, 2026

Respectfully submitted,

*/s/ Tiffany Troy*
Tiffany Troy, Esq.
Troy Law, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
tiffanytroy@troypllc.com
*Attorney for Plaintiff*